.[No. 18674.   Department Two.   November 19, 1924.]

## D. S. COWGILL, *Appellant,* v. CITIZENS STATE BANK OF TEKOA, *Respondent.*[1]

EQUITY (3, 4) — GROUNDS FOR RELIEF — MUTUAL MISTAKE — EVIDENCE—SUFFICIENCY. Upon a sale and assignment by a bank of three mortgages, the third of which was given to take up the other two, and to cover an additional indebtedness, but all of which were held of record to cut out an intervening encumbrance, equity will relieve from a mutual mistake erroneously reciting and warranting an amount due on the third mortgage, which was immaterial under the circumstances and not relied upon by, and did not mislead, any party interested in the foreclosure proceeding, which was merely to perfect title.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered February 16, 1924, in favor of the defendant, in an action on contract, tried to the court. Affirmed.

¹Reported in 230 Pac. 150.

*Lawrence H. Brown* and *William C. Meyer,* for appellant.

*Post, Russell & Higgins,* and *J. D. McMannis,* for respondent.

FULLERTON, J.—On August 17, 1913, Charles Libby and his wife, Sadie Pride Libby, being the owners of certain lands situated in the state of Idaho, mortgaged the same to O. D. McKeehen to secure a note of $1,175. On August 8, 1919, they mortgaged the same land to the respondent, Citizens State Bank of Tekoa, to secure a note of $768.66. Sometime after the execution of this latter mortgage, the respondent bank purchased the mortgage and note given to McKeehen, which then had been reduced to $934.48. On April 27, 1920, Libby and wife again mortgaged the land to the respondent bank to secure a note of $2,500. This latter mortgage was an endeavor to get all the indebtedness of the Libbys to the bank into one obligation, and was made up of the amounts due on the two mortgages above mentioned and certain advancements which the bank had made to Libby and which were then unsecured, the intention of the bank being to cancel the first two mortgages on the recording of the third. Before the mortgage was recorded, however, the bank discovered that the Libbys had mortgaged the property to one Murray to secure a note of $810. This mortgage, while subsequent to the first two of the mortgages, was prior to the third, and the bank could not carry out its intention without making the lien for the entire sums due it subsequent to the Murray mortgage. It, therefore, recorded the mortgage and held it as security for the unsecured advancements it had made to the Libbys.

Murray assigned his note and mortgage to the appellant Cowgill for collection, and Cowgill brought an

action in the Idaho court to foreclose the mortgage, making the respondent bank a party defendant to the suit. The bank appeared in the suit and set up its several mortgages, asking, among other things, the affirmative relief of foreclosure.

While the matters stood in this situation, negotiations were begun between the respondent bank and Murray looking to the placement of the claims against the Libbys in one ownership. It was thought that the property was insufficient to pay the liens in full, and the negotiations were over the question of how much of a sacrifice the one party was willing to make to the other. These finally terminated in an agreement by which the respondent bank, whose mortgages at that time aggregated some $3,200, consented to sell them to Murray for $2,250. A written assignment was prepared and executed by the respondent bank purporting to express the agreement. It contained the following provision:

"8. First party [the respondent bank] warrants that there is due and unpaid on said mortgage for Twenty-five Hundred ($2500) Dollars, recorded in Book 1 of Mortgages, page 55, and on the notes the same secures, the full sum of Fifteen hundred fourteen & 69/100 Dollars, and in any action brought by second party or his assigns to foreclose the same will furnish evidence to that effect."

Murray, through his assignee, thereupon took steps to complete the foreclosure proceedings. At this time an individual, whose name is variously spelled in the record, offered on behalf of the Libbys to purchase the property at a foreclosure sale for a sum sufficient to pay in full the obligations due upon the notes and mortgages then in process of foreclosure. He contended, however, that there was not due on the third of the mortgages assigned by the respondent

bank the amount recited in the clause of the assignment above quoted, or any greater sum than $746.03. When the respondent bank was called on with reference to the matter, it conceded that the correct amount due on the mortgage was the amount stated by the intending purchaser. Murray thereupon authorized a settlement upon this basis, and after the termination of the foreclosure proceedings, caused his assignee to institute the present action to recover as for a breach of the warranty clause contained in the instrument of assignment. The respondent bank defended on the ground of mutual mistake. The trial was had before the court sitting without a jury, and resulted in a denial of recovery. The present appeal is from the judgment so entered.

While the briefs of counsel are somewhat full, we have not found that the question at issue requires extended discussion. That there was an actual mistake in the amount stated in the assignment to be due on the mortage mentioned therein, the evidence is not in doubt. As we have said, the purpose of the bank in taking the mortgage was to put into one instrument all of the indebtedness owing by the Libbys to the bank. This indebtedness was then represented by three distinct items; the other mortgages named in the assignment and an open indebtedness of the Libbys to the bank. This latter item was shown to be $746.03. Since the bank did not cancel these other mortgages, as was the intention at the time of the execution of the latter mortgage, it at best stood as security only for the last of the items mentioned.

Nor does the evidence disclose that the amount due on this particular mortgage was a circumstance inducing Murray to purchase the mortgages. The negotiations leading up to the agreement to purchase

were concluded some ten days before the assignment was executed. In this agreement the price to be paid for the mortgages was definitely fixed, although the evidence is clear that Murray did not then know for what sum this mortgage stood as security. The evidence also makes it clear why he would agree to make the purchase without knowledge of the facts. His representative, who took a part in all of the negotiations and who finally concluded them, testified that the principal value of the mortgage was to perfect the title to the property; the prior mortgages possibly being defective in description. The witness prepared the assignment, and was the only person present representing Murray at the time of its execution. Concerning the amount due on the mortgage, he gave this testimony: "The amount was not particularly material. I will say that if they had written in any other sum I couldn't have had anything to say about it."

Plainly, we think, since there was an actual mistake in the statement of the amount due on the mortgage; and since it was the intent of the parties to state only the actual amount due, it is a mistake against which equity will afford relief.

The judgment is affirmed.

MAIN, C. J., MITCHELL, BRIDGES, and PEMBERTON, JJ., concur.